IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| EUGENE SCALIA, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-19-242-PRW |
| SAMIR GHOSN, individually, and THE CHATEAU OF LAWTON, INC., a corporation, | ) ) ) ) | |
| Defendants. | ) | |

## **ORDER**

Plaintiff claims that Defendants willfully violated the Fair Labor Standards Act's[1] minimum wage, overtime, and recordkeeping provisions, and as a result are liable for $22,819.06 in damages plus an equal amount of liquidated damages.[2] Plaintiff argues that the undisputed material facts entitle him to an order granting summary judgment and enjoining future violations of the FLSA. For the reasons outlined below, the motion is granted in part and denied in part.

*Background*

The Chateau of Lawton is a retirement and assisted living facility operated by Defendants Samir Ghosn and The Chateau of Lawton, Inc.[3] Plaintiff initiated an

---

[1] 29 U.S.C § 201 *et seq.*

[2] *See* Pl.'s Mot. for Summ. J. & Br. in Supp. (Dkt. 27) at 4.

[3] *See* Compl. (Dkt. 1) at 1–2; Pl.'s Mot. for Summ. J. & Br. in Supp. (Dkt. 27) at 5.

investigation into the employment practices at the Chateau of Lawton in August 2017.[4] The investigation was performed in large part by wage and hour inspector Cheryl Masters, who concluded from December 2015 through December 2017, many of the Chateau of Lawton's employment practices violated the FLSA.[5] In particular, she concluded the employment practices of the Chateau of Lawton violated the FLSA's minimum wage, overtime, and recordkeeping provisions.[6] As a result, Plaintiff brought this suit for these alleged FLSA violations against Defendants and now move for summary judgment on all claims.

### *Standard of Review*

Fed. R. Civ. P. 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding whether summary judgment is proper, the court does not weigh the evidence and determine the truth of the matter asserted, but determines only whether there is a genuine dispute for trial before the fact-finder.[7] The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment.[8] A fact is "material" if, under the substantive law, it is

---

[4] *See* Compl. (Dkt. 1) at 3.

[5] *See* Pl.'s Mot. for Summ. J. & Br. in Supp. (Dkt. 27) at 6–16.

[6] *See id.*

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

essential to the proper disposition of the claim.[9] A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.[10]

If the movant carries the initial burden, the nonmovant must then assert that a material fact is genuinely in dispute and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that the materials cited [in the movant's motion] do not establish the absence . . . of a genuine dispute"; or by "showing . . . that an adverse party [i.e., the movant] cannot produce admissible evidence to support the fact."[11] The nonmovant does not meet its burden by "simply show[ing] there is some metaphysical doubt as to the material facts,"[12] or by theorizing a "plausible scenario" in support of its claims.[13] "Rather, 'the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"[14] If there is a

---

[9] *Anderson*, 477 U.S. at 248; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[10] *Id.*

[11] Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. 317; *Beard v. Banks*, 548 U.S. 521, 529 (2006).

[12] *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (alteration in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995)).

[13] *Scott v. Harris*, 550 U.S. 372, 380 (2007).

[14] *Neustrom*, 156 F.3d at 1066 (quoting *Anderson*, 477 U.S. at 251–52; *Bingaman v. Kan. City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993)).

genuine dispute as to some material fact, the district court must consider the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party.[15]

The Court's local rule governing summary judgment also provides "[t]he brief in opposition to a motion for summary judgment . . . shall begin with a section responding, by correspondingly numbered paragraph, to the facts that the movant contends are not in dispute and shall state any fact that is disputed . . . ."[16] Each individual statement "shall be followed by citation, with particularity, to any evidentiary material that the party presents in support of its position pursuant to Fed. R. Civ. P. 56(c)."[17] If this procedure is not followed, then "[a]ll material facts set forth in the statement of material facts of the movant may be deemed admitted for the purpose of summary judgment . . . ."[18]

*Analysis*

*Procedural & Evidentiary Matters*

**1. Plaintiff's list of undisputed material facts is deemed admitted**

Defendants did not comply with the summary judgment procedure mandated by LCvR56.1 because they did not cite to any evidentiary material to dispute Plaintiff's

---

[15] *Scott*, 550 U.S. at 380; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Sylvia v. Wisler*, 875 F.3d 1307, 1328 (10th Cir. 2017).

[16] LCvR56.1(c).

[17] LCvR56.1(d).

[18] LCvR56.1(e).

material facts.[19] As a result, Plaintiff's material facts are deemed admitted.[20] These facts and any inferences are still, however, viewed in the light most favorable to Defendants.

**2. Anonymous employee statements underlying affidavit of WHI Masters are not hearsay and informer's privilege remains in effect**

The bulk of Plaintiff's evidentiary support is found in WHI Masters' affidavit. The factual statements contained within are largely based not on WHI Masters' personal knowledge, but rather on interviews she conducted with 17 anonymous employees.[21] Defendants argue such portions of the affidavit accordingly must be stricken, and as a result, summary judgment is inappropriate, because Plaintiff fails to submit admissible evidence.[22] Plaintiff disagrees, arguing that the interviews are not hearsay because they are "'offered against an opposing party and . . . made by the party's agent or employee on a matter within the scope of that relationship while it existed.'"[23] In support, Plaintiff cites cases where courts have admitted employee statements against an employer in the context of alleged FLSA violations.[24]

But whether the statements are hearsay is not the only issue. The employee

---

[19] *See* Defs.' Resp. & Br. in Opp. to Pl.'s Mot. for Summ. J. (Dkt. 32) at 7–10.

[20] *See* LCvR56.1.

[21] Aff. of Cheryl Masters (Dkt, 27-1) at 5.

[22] Defs.' Resp. & Br. in Opp. to Pl.'s Mot. for Summ. J. (Dkt. 32) at 11–12.

[23] Pl.'s Reply to Defs.' Resp. & Br. in Opp. to Pl.'s Mot. for Summ. J. (Dkt. 36) at 7 (citing Fed. R. Evid. 801(d)(2)(D)).

[24] *See, e.g.*, *Solis v. China Star of Wichita, Inc.*, No. 08-1005-KMH, 2012 WL 1059876, at *2 (D. Kan. Mar. 28, 2012); *Perez v. Los Arcos Seafood & Grill, Inc.*, No. 3:12-CV-01133, 2016 WL 1029519, at *4 (M.D. Tenn. Mar. 9, 2016).

statements are anonymous, and the cases cited by Plaintiff do not deal with anonymous employee statements as we have here. The employees interviewed by WHI Masters and referenced in her affidavit are anonymous because the government has asserted its informer's privilege, which allows it "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law" to further and protect "the public interest in effective law enforcement."[25] This privilege "is recognized in FLSA cases, where enforcement is dependent on the cooperation and statements given by employees."[26] It is a qualified, rather than absolute, privilege "limited by the underlying purpose of the privilege as balanced against the fundamental requirements of fairness and disclosure in the litigation process."[27] Thus, "[w]here the disclosure of an informer's identity . . . is essential to a fair determination of a cause, the privilege must give way."[28]

Defendants have not motioned the Court to require disclosure of the anonymous employees, nor have they made an argument about why the privilege should be lifted. Instead, Defendants argue parts of WHI Masters' affidavit relying on anonymous employee statements must be stricken because they are not based on WHI Masters' personal knowledge. But these statements are not hearsay pursuant to Fed. R. Evid. 801(d)(2)(D)

---

[25] *Roviaro v. United States*, 353 U.S. 53, 59 (1957).

[26] *Acosta v. Five Star Automatic Fire Prot., LLC*, No. EP-16-CV-282-PRM, 2017 WL 10604137, at *2 (W.D. Tex. May 30, 2017).

[27] *Hodgson v. Charles Martin Inspectors of Petroleum, Inc.*, 459 F.2d 303, 305 (5th Cir. 1972).

[28] *Roviaro*, 353 U.S. at 60–61.

because Plaintiff offers them against Defendants and they were made by Defendants' own employees on matters like wages and breaks, which are within the scope of the employee-employer relationship while it existed. These anonymous employee statements accordingly constitute admissible evidence as they are not hearsay, and the government's unchallenged invocation of the informer's privilege protects the identities of the anonymous employees.

*Substantive Matters*

**1. Violations of 29 U.S.C. §§ 206(a), 207(a)(1), & 15(a)(2)**

Defendants concede that they violated §§ 206(a), 207(a)(1), & 15(a)(2) by improperly converting hours on payroll, misclassifying non-exempt employees as exempt,[29] failing to include non-discretionary bonuses into employees' regular rates of pay, improperly making deductions, and failing to use the proper overtime rate.[30] Plaintiff supports these violations with evidentiary material.[31] As a result, there is no genuine issue of material fact as to Plaintiff's claims that Defendants violated §§ 206(a), 207(a), and 15(a)(2) and Plaintiff is accordingly entitled to judgment as a matter of law as to liability and damages in the stipulated amount of $5,389.52.[32]

---

[29] Defs.' Resp. & Br. in Opp. to Pl.'s Mot. for Summ. J. (Dkt. 32) at 7.

[30] Jt. Stipulations Regarding Summ. J. (Dkt. 39) at 2 ("Defendants violated Sections 6 (minimum wage) and 7 (overtime) of the FLSA, resulting in back liability in the amount of $5,389.52. The violations include Defendants' improper conversion of hours on payroll, misclassification of non-exempt employees as exempt, failure to include non-discretionary bonuses into employees' regular rates of pay, improper deductions, and failure to use the proper overtime rate.").

[31] *See* Pl.'s Mot. for Summ. J. & Br. in Supp. (Dkt. 27) at 5–14.

[32] *See* Jt. Stipulations Regarding Summ. J. (Dkt. 39) at 2.

*Automatic deduction of meal periods*

Plaintiff alleges Defendants automatically deducted meal periods from time worked even when employees were not free from duty during these meal periods.[33] In addition, Plaintiff asserts employees were not allowed to leave work during their meal periods and they were not provided a place to go to be away from residents, their guests and family members, or other staff.[34] Again, these allegations are deemed admitted.[35] Plaintiff continues that "[s]ince employees were on the clock and not free from duty during these times, all of the automatic deductions should be added back and employees should be compensated accordingly as work time."[36]

Defendants assert that its practice of automatically deducting meal times does not violate the FLSA.[37] They cite a non-binding case for the proposition that "free from duty" does not mean completely free from duty or any interruptions, and so long as an employee's meal time is not predominately for the employer's benefit, the employee is not engaged in "substantial duties," and the employee can pursue mealtime adequately and comfortably.[38] In Defendants' view, even if employees could not leave the premises and had no place to go during meal times, these facts do not establish employees were not free from duty.[39]

---

[33] *Id.* at 8.

[34] *Id.* at 8–9.

[35] *See supra* at 4.

[36] Pl.'s Mot. for Summ. J. & Br. in Supp. (Dkt. 27) at 24.

[37] Defs.' Resp. & Br. in Opp. to Pl.'s Mot. for Summ. J. (Dkt. 32) at 12.

[38] *Id.* (citing *Hill v. United States*, 751 F.2d 810, 814 (6th Cir. 1984)).

[39] *Id.* at 14.

Pursuant to 29 C.F.R. 785.19, bona fide meal periods are not counted as work time.[40] These are "rest periods" during which "the employee must be completely relieved from duty for the purposes of eating regular meals."[41] "The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating."[42] Additionally, "[i]t is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period."[43]

The Tenth Circuit explains that an employee is not "completely relieved from duty" if her meal time is spent "predominately for the benefit of the employer."[44] This is a highly fact-intensive inquiry.[45] In *Beasley v. Hillcrest Medical Center*,[46] the Tenth Circuit addressed the compensability of meal periods under 29 C.F.R. 785.19.[47] The employees were nurses and technicians who sought compensation for meal periods that were sometimes interrupted by work-related tasks.[48] These interruptions included phone calls, communications with doctors and families of patients, and the administration of pain

---

[40] 29 C.F.R. 785.19(a).

[41] *Id*.

[42] *Id*.

[43] 29 C.F.R. 785.19(b).

[44] *Beasley v. Hillcrest Med. Ctr.*, 78 F. App'x 67, 70 (10th Cir. 2003).

[45] *Id.*

[46] *Id*.

[47] *Id*. at 71.

[48] *Id*. at 68.

9

medication.⁴⁹ During meals, the employees had to watch monitors and respond to any problems that arose.⁵⁰ The employees were also restricted as to where they could take their meals.⁵¹ After considering whether the "degree of interruption caused [the employees] to spend their meal periods primarily for [their employer's] benefit,"⁵² the Tenth Circuit found there was a triable issue as to whether the employees spent their meal periods "predominantly for the benefit of the employer."⁵³

It is undisputed that during designated meal periods, the Chateau of Lawton employees were not free from duty, not allowed to leave the premises, and had no place to go to be away from facility residents, their guests and family members, or other staff. But this evidence alone is insufficient for the Court to determine whether the employees spent their meal periods predominantly for the benefit of Defendants. Viewing all facts and inferences in the light most favorable to Defendants, it is possible that meal periods were not predominantly for the benefit of Defendants. But, as shown by *Beasley*, the Court needs more specific facts about the degree of interruption to meal periods and what duties employees were allegedly required to fulfill during their meal periods to determine whether meal periods were predominately for the benefit of Defendants.

Simply because one employee's meal period was predominantly for the benefit of

---

⁴⁹ *Id*. at 70–71.

⁵⁰ *Id*. at 71.

⁵¹ *Id*.

⁵² *Id*. at 69.

⁵³ *Id*. at 71.

Defendants does not necessarily mean the same is true as to all employees. But Plaintiff only presents general evidence about Defendants' mandatory break time policy, lack of a break room during WHI Masters' investigation, and the fact that employees were not allowed to leave the premises to support his contention that all employees are due compensation for all mandatory break time. This is not enough to allow the Court to engage in the highly fact-intensive inquiry to determine whether each of the fifty employees' meal periods were predominantly for the benefit of Defendants.[54]

Finally, Plaintiff only presents evidence of meal time interruptions for a few months of the entire investigation period. WHI Masters' report explains that "at the time of the investigation" there was no break room, so "employees ate in common areas that the residents occupied where residents and their family members routinely interrupted them."[55] Her investigation began in September 2017 and does not provide any insight into where employees took their meal periods or how often and to what degree they were interrupted during meal periods for the alleged violations that occurred from December 2015 to August 2017.

Thus, a genuine issue of material fact remains as to whether Defendants' practice of automatic meal deductions violated the FLSA and summary judgment is denied.

---

[54] The Court also notes that WHI Masters did not interview all of these employees, as she only interviewed 17 current or past Chateau employees and/or employees of other facilities operated by Defendant Ghosn. *See* Aff. of Cheryl Masters (Dkt, 27-1) at 5.

[55] *Id*. at 8.

## 2. Violation of 29 U.S.C. §§ 211(c) & 215(a)(5)-Recordkeeping

§ 211(c) requires employers to keep employee records related to "wages, hours, and other conditions and practices of employment maintained by him . . . ,"[56] and § 215(a)(5)[57] makes failing to do so unlawful. These records include payroll records and other basic employment records.[58] Employers subject to the FLSA are also required to post a notice about the FLSA at the workplace.[59]

It is undisputed that Defendants did not ensure "payroll, pay stubs, and paychecks accurately reflected all hours worked by non-exempt employees" and "artificially labeled Mr. Pratt's regular wages as a 'bonus' on payroll records to circumvent the payment of overtime."[60] Defendants also "did not have [] minimum wage FLSA, FMLA, or EPPA posters in the workplace."[61] Thus, there is no genuine issue as to any material fact as to this

---

[56] 29 U.S.C. § 211(c): "Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder."

[57] "[I]t shall be unlawful for any person . . . to violate any of the provisions of section 211(c) . . . ." 29 U.S.C. § 215(a)(5).

[58] *See* 29 C.F.R. 516.5–.6.

[59] *See* 29 C.F.R. 516.4.

[60] Pl.'s Mot. for Summ. J. & Br. in Supp. (Dkt. 27) at 16.

[61] *Id.*; Jt. Stipulations Regarding Summ. J. (Dkt. 39) at 3 ("Defendants failed to produce all payroll records for Robert Pratt from December 30, 2017 through January 12, 2018, and all timecards for Robert Pratt from December 2017 through July 2018.") ("During the investigation period, Defendants violated Section 11 of the FSLA by failing to keep or maintain accurate records in at least one instance.").

12

claim and Plaintiff is entitled to judgment as a matter of law.

## 3. Willfulness

Plaintiff argues that Defendants' minimum wage, overtime, and recordkeeping violations were willful. If so, then the two-year statute of limitations is extended to three years.[62] A violation is willful where "the employer either knew or showed reckless disregard for the matter of whether its conduct violated the statute."[63]

Plaintiff cites Defendant Ghosn's previous FLSA violations to demonstrate willfulness here. Defendant Ghosn is a 50% owner of another assisted living facility, Brookridge, that was investigated for similar FLSA violations in 2011.[64]

> [The investigation] found identical FLSA violations as were discovered in this case, related to automatic deductions for meal periods when employees were not relieved from duty. Defendant Ghosn attended the 2011 opening and final conferences. He agreed to pay $6,473.05 in overtime back wages, and he agreed comply with the minimum wage, overtime, and record keeping provisions of the FLSA following Wage Hour's investigation. Defendant Ghosn also stated he would require employees to clock in and out for their meal breaks, if they took them, in lieu of his practice of automatic meal deductions.[65]

---

[62] *See* 29. U.S.C. § 255 ("Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act--(a) if the cause of action accrues on or after May 14, 1947--may be commenced within two years after the cause of action accrued, . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued[.]").

[63] *Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir.2011) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

[64] Pl.'s Mot. for Summ. J. & Br. in Supp. (Dkt. 27) at 15.

[65] *Id*. (internal citations omitted).

13

Additionally, "[a]t the time of the 2011 investigation, Wage and Hour discussed the requirements of the FLSA and provided Defendant Ghosn with numerous publications that summarize employers' obligations under the FLSA."[66]

None of these facts are disputed, and the Court finds that they demonstrate that the minimum wage, overtime, and recordkeeping violations were willful because Defendant Ghosn had actual notice of his obligations under the FLSA as to the very issues involved here. Summary judgment is thus granted as to the willfulness of the §§ 206, 207, and 215(a)(2) claims, except those predicated on automatic meal time deductions.

### *Liquidated damages as to §§ 206 & 207 violations*

The FLSA generally mandates an award of liquidated damages equal to the amount of unpaid wages or compensation for violations of §§ 206 and 207.[67] But it is within the Court's discretion not to award liquidated damages in an FLSA action for minimum wage or overtime violations if an "employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]."[68] To satisfy the good faith requirement, "the employer [must] have 'an honest intention to ascertain and

---

[66] *Id.*

[67] *See* 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.").

[68] 29 U.S.C. § 260.

14

follow the dictates of the [FLSA].'"[69] "The additional requirement that the employer have reasonable grounds for believing that his conduct complies with the [FLSA] imposes an objective standard by which to judge the employer's behavior."[70]

Defendants argue that their actions were in good faith and cite the affidavit of Defendant Ghosn which explains that every time he learned of a violation, he corrected the problem.[71] But this affidavit does not convince the Court that Defendants' violations were in good faith or reasonable. The affidavit repeatedly states that Defendant Ghosn thought that he was complying with the law (the basis for which he does not explain), but this belief is not in good faith or reasonable considering his exposure to the FLSA requirements via the virtually identical FLSA investigation that occurred at Brookridge. Thus, there is no genuine issue as to any material fact as to liquidated damages on the minimum wage and overtime violation claims (other than the alleged overtime violations due to the automatic deduction of meal times), and Plaintiff is entitled to judgment as a matter of law.

*Injunctive relief*

Plaintiff requests injunctive relief pursuant to 29 U.S.C. § 217[72] to restrain any

---

[69] *Renfro v. City of Emporia, Kan.*, 948 F.2d 1529, 1540 (10th Cir. 1991) (internal citation omitted).

[70] *Id.* (internal citation and quotation marks omitted).

[71] Aff. of Samir Ghosn (Dkt. 32-1).

[72] "The district courts . . . shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title, including in the case of violations of section 215(a)(2) of this title the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter (except sums which employees are barred from recovering, at the time of the commencement of the action to restrain the violations, by virtue of the provisions of section 255 of this title)."

15

future FLSA violations by Defendants.[73] He argues Defendants are likely to continue to violate the FLSA because although they received notice of violations at Brookridge and changed violative practices at that facility, no such change occurred at the Chateau of Lawton and the same minimum wage and overtime violations happened here.[74]

The purpose of a FLSA injunction "is to prevent future violations in the public interest, not to punish for past transgressions."[75] "Equity will not do a useless or vain thing, and in the absence of some likelihood or probability that the violations will recur, the court is fully justified in refraining from entering an empty decree."[76] Thus, the Court declines to grant any injunctive relief at this time because although Plaintiff has identified numerous ways Defendants violated the FLSA, he does not identify the specific injunctive relief he seeks. Moreover, there is a genuine issue of material fact as to the likelihood of future violations. For example, Defendants now have an established break room for employee meals[77] and require employees to clock in and out during meal times.[78]

*Conclusion*

Summary judgment is accordingly **GRANTED** as to (1) Plaintiff's claim pursuant to 29 U.S.C. §§ 206 and 15(a)(2); (2) Plaintiff's claims pursuant to 29 U.S.C. §§ 207 and

---

[73] Pl.'s Mot. for Summ. J. & Br. in Supp. (Dkt. 27) at 27–29.

[74] *Id*. at 28.

[75] *Mitchell v. Chambers Const. Co*., 214 F.2d 515, 517 (10th Cir. 1954).

[76] *Id*.

[77] Pl.'s Mot. for Summ. J. & Br. in Supp. (Dkt. 27) at 9, n. 4.

[78] *Id*. at 9.

15(a)(2), except those predicated on automatic meal time deductions; (3) Plaintiff's claims pursuant to 29 U.S.C. §§ 11(c) and 15(a)(5); (4) the willfulness of these aforementioned violations; and (5) the appropriateness of liquidated damages as to the aforementioned violations of §§ 206 and 207, and summary judgment is **DENIED** as to (1) Plaintiff's claim pursuant to 29 U.S.C. §§ 207 and 15(a)(2) predicated on automatic meal time deductions; and (2) Plaintiff's request for injunctive relief.

**IT IS SO ORDERED this 2nd day of April, 2020.**

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE